1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11                            ----oo0oo----

12

13   FRANCIS HORN, an individual        No. CIV-S-05-0814 MCE/KJM

14           Plaintiff,

15      v.                              <u>MEMORANDUM AND ORDER</u>

16   STATE OF CALIFORNIA;
     CALIFORNIA DEPARTMENT OF
17   CORRECTIONS; ASSOC. WARDEN
     K.M. CHASTAIN, individually;
18   CHIEF DEPUTY WARDEN STILES,
     individually; CORRECTIONAL
19   OFFICER J. GRADY,
     individually; MTA W. VAN
20   SANDT, individually; RN T.
     MEEKS, individually; RN G.
21   LAUCIRICA, individually; RN J.
     MARSTON, individually; FRANK
22   CHRISTIAN, individually, and
     DOES 1 through 250 INCLUSIVE,
23
             Defendants.
24

25                            ----oo0oo----
26

27      In this action, Plaintiff Francis Horn ("Horn") seeks

28   damages stemming from the death of her son while incarcerated in

                                     1

1   a California state prison. In addition to filing against the
2   State of California ("State") and the Department of Corrections,
3   Plaintiff has included various correctional officers and
4   employees as defendants as well as another inmate.[1]

5       Plaintiff asserts three claims alleging federal
6   constitutional violations pursuant to 42 U.S.C. § 1983. In
7   addition, Plaintiff's complaint includes nine state law claims
8   alleging wrongful death, medical malpractice, failure to furnish
9   medial care for a prisoner, failure to provide adequate medical
10  personnel and facilities, fraud, obstruction of justice, abuse of
11  process, intentional infliction of emotional distress ("IIED"),
12  and negligence. The Plaintiff's complaint, which was originally
13  filed in state court, was removed to this Court in accordance
14  with 28 U.S.C. § 1441(c) based upon the alleged § 1983
15  violations.

16      On May 6, 2005, the California Attorney General filed a
17  motion to dismiss pursuant to Federal Rule of Civil Procedure
18  12(b)(6),[2] on behalf of the State only. Defendants Chastain,
19  Stiles, Grady, Van Sandt, Meeks, and Marston joined the motion to
20  dismiss on June 9, 2005.[3]

21

22      [1] Individual defendants include Associate Warden K.M.
    Chastain ("Chastain"), Chief Deputy Warden Stiles ("Stiles"),
23  Correctional Officer J. Grady ("Grady"), MTA W. Van Sandt ("Van
    Sandt"), RN T. Meeks ("Meeks"), RN G. Laucirica ("Laucirica"), RN
24  J. Marston ("Marston"), and inmate Frank Christian ("Christian").

25      [2] Unless otherwise stated, all further references to a
26  "Rule" are to the Federal Rules of Civil Procedure.

27      [3] Defendants, Department of Corrections, Laucirica, and
    Christian were not joined to Defendants' motion to dismiss. Prior
28  to the hearing on the motion to dismiss, it was unclear to the

1

2

**BACKGROUND**[4]

3    Plaintiff's son Gilbert M. Salazar ("Salazar") was an inmate

4  at the California State Prison at Sacramento, California. Salazar

5  died in prison on or about January 11, 2003 and his death was

6  ruled a suicide by the Department of Corrections.

7    Plaintiff alleges that Salazar was beaten to death by his

8  cellmate, Defendant Christian. Plaintiff claims that Defendants

9  Chastain and Stiles, as members of the State Prison's

10 classification committee, violated applicable standards and

11 regulations by deciding to house Salazar with Christian because

12 Defendants were aware that Salazar and Christian had been

13 involved in prior altercations. Plaintiff further alleges that

14 Defendants engaged in a "cover up" to rule Salazar's death a

15 suicide when they knew he had been killed by Christian. In the

16 alternative, Plaintiff claims that Salazar committed suicide

17 because of the violence and abuse he suffered at the hands of

18 Defendant Christian.

19    Plaintiff also alleges that medical attention for Salazar

20 was delayed because Defendant Grady, the correctional officer who

21 discovered Salazar, was not carrying a "personal alarm" which

22 caused a delay in responding which hastened Salazar's death.

23

_____

24 which Defendants had or had not been served and/or joined in the
   motion. At the hearing, however, Defendants' counsel stated in
25 open court that the "Notice of Joinder to the Motion to Dismiss"
   was intended to constitute an appearance on behalf of all of the
26 individual Defendants.

27

28    [4] The facts as stated in this section are taken directly
   from the Plaintiff's complaint.

3

1    Finally, Plaintiff alleges that the medical staff that treated
2    Salazar did not provide him with adequate or proper medical
3    treatment which also lead to his death.

4
5                              **STANDARD**
6

7          On a motion to dismiss for failure to state a claim under
8    Rule 12(b)(6), all allegations of material fact must be accepted
9    as true and construed in light most favorable to the nonmoving
10   party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337-38 (9th
11   Cir. 1996). A complaint will not be dismissed for failure to
12   state a claim "'unless it appears beyond doubt that plaintiff can
13   prove no set of facts in support of her claim that would entitle
14   her to relief.'" <u>Yamaguchi v. Dep't of the Air Force</u>, 109 F.3d
15   1475, 1480 (9th Cir. 1997) (quoting <u>Lewis v. Tel. Employees</u>
16   <u>Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996).

17         If a complaint on its face includes allegations disclosing
18   an absolute defense or bar to recovery, a motion to dismiss under
19   Rule 12(b)(6) is appropriate. See <u>Jablon v. Dean Witter & Co.</u>,
20   614 F.2d 677, 682 (9th Cir. 1980).

21         If the Court grants a motion to dismiss, it must then decide
22   whether to grant leave to amend. Generally, leave to amend should
23   be denied only if it is clear that the deficiencies of the
24   complaint cannot be cured by amendment. <u>Broughton v. Cutter</u>
25   <u>Labs.</u>, 622 F.2d 458, 460 (9th Cir. 1980).
26   ///
27   ///
28   ///

                                    4

1

**ANALYSIS**

2

**A. Plaintiff Lacks Standing to Bring Certain Claims on Her Son's Behalf.**

3

**1. Section 1983 Claims**

4

5    In her complaint, Plaintiff asserts three § 1983 claims

6    against the individual Defendants on grounds that said Defendants

7    exhibited "deliberate indifference" to her son's medical health

8    and safety needs in violation of the Eighth and Fourteenth

9    Amendments to the extent that he was subjected to cruel and

10   unusual punishment. Defendants now move to dismiss these claims,

11   arguing that because the § 1983 claims are for injuries Salazar

12   suffered prior to his death, Plaintiff can only bring the claims

13   in a representative capacity.

14   In order to properly maintain these claims, Plaintiff must

15   have standing as a representative or successor in interest under

16   the California state survival statute. <u>See</u> <u>Moreland v. Las Vegas</u>

17   <u>Metro. Police Dep't</u>, 159 F.3d 365, 369 (9th Cir. 1998) (stating

18   that in a § 1983 action, the party bringing a survival action

19   must show that the particular state's law allows a survival

20   action and that the plaintiff meets the requirements for bringing

21   such an action); Cal. Civ. Proc. § 377.60.

22   California's survival statute allows a successor in interest

23   to bring a claim on behalf of the decedent when the decedent does

24   not have a personal representative. Cal. Civ. Proc. § 377.30. A

25   person seeking to file an action as a decedent's successor in

26   interest, however, must file an affidavit to that effect. Cal.

27   Civ. Proc. § 377.32.

28   ///

5

1  These requirements have not been satisfied in this case inasmuch
2  as Plaintiff's claims are only made on her individual behalf.

3        Because each § 1983 claim is based on actions by the
4  Defendants constituting "deliberate indifference to the
5  <u>plaintiff's son</u>," Plaintiff's § 1983 claims belong to Salazar
6  (Compl. ¶¶51, 53, 55) (emphasis added). The Court agrees with
7  Defendants that Plaintiff must bring the § 1983 claims as
8  presently asserted in a representative capacity. Because
9  Plaintiff has not complied with the statutory requirements for
10 bringing such claims, she lacks standing and the § 1983 claims
11 contained in her complaint must be dismissed.

12       In opposition to Defendant's motion to dismiss, Plaintiff
13 appears to concede that her § 1983 claims as plead are survival
14 claims and that she must have standing under state law to bring
15 such claims.[5] Plaintiff nonetheless asserts that she can maintain
16 her own § 1983 claim based on a Fourteenth Amendment right
17 violation: a mother's right to the society and companionship of
18 her son. <u>See</u> <u>Ward v. City of San Jose</u>, 967 F.2d 280, 286 (9th
19 Cir. 1991); <u>Kelson v. City of Springfield</u>, 767 F.2d 651, 655 (9th
20 Cir. 1985) ("[E]xisting Supreme Court and Ninth Circuit precedent
21 establish that a parent has a constitutionally protected liberty
22 interest in the companionship and society of his or her child.
23 The state's interference with that liberty interest without due
24 process of law is remediable under section 1983.").

25

26        [5] Although Plaintiff contends that the § 1983 claims only
27 arose upon her son's death, she states that she is aware of
   authority where the plaintiff did not sue in her representative
28 capacity and the civil rights claims were dismissed.

6

1   Plaintiff did not raise this direct § 1983 claim in her
2   complaint and only now identifies it in opposition to Defendants'
3   motion to dismiss. Plaintiff urges the Court to allow her to
4   amend her complaint so that she may allege a direct § 1983 claim
5   based on a violation of her Fourteenth Amendment rights, as
6   opposed to any constitutional rights that accrued to her son.

7   Given these allegations, Plaintiff will be permitted to
8   amend her complaint. In addition to alleging sufficient facts in
9   her complaint to support a direct Fourteenth Amendment violation
10  claim, Plaintiff should also be afforded the opportunity to amend
11  her complaint so as to bring Salazar's § 1983 claims in a
12  representative capacity. See Haddock v. Board of Dental Examiners
13  of Calif., 777 F.2d 462, 464 (9th Cir. 1985) ("[A] complaint
14  should not be dismissed if it states a claim under any legal
15  theory, even if the plaintiff erroneously relies on a different
16  legal theory."). Accordingly, Defendants motion to dismiss
17  Plaintiff's § 1983 claims as stated in the Tenth, Eleventh, and
18  Twelfth Causes of Action is GRANTED with leave to amend.

19  **2. State Claims**

20  In addition to challenging the validity of Plaintiff's §
21  1983 claims, Defendants move to dismiss all of Plaintiff's state
22  claims, also arguing that Plaintiff does not have standing to
23  bring the claims as Salazar's representative.

24  As with the § 1983 claims, Defendants contend that all the
25  state causes of action, except for the wrongful death claim, must
26  be dismissed because they are survival actions and Plaintiff
27  failed to file an affidavit with the Court as required by
28  California law.

7

1  In opposition to Defendants' motion to dismiss, Plaintiff claims

2  that all causes of action are hers. Plaintiff argues that she was

3  not required to file an affidavit because she is not bringing the

4  claims as Salazar's successor in interest. (Opp'n 14:20-21).

5      Plaintiffs's claims for fraud, corruption and malice,

6  obstruction of justice, abuse of process, and IIED are not

7  survival actions because, according to the complaint, they relate

8  to the "cover up" of Salazar's death. A survival action, on the

9  other hand, is brought for injuries suffered by the decedent

10  before his death. See Black's Law Dictionary 1459 (7th ed. 1999);

11  Cal. Civ. Proc. § 377.34.

12      Although Plaintiff's individual claims for fraud, corruption

13  and malice, obstruction of justice, abuse of process, and IIED

14  may consequently be maintained, her claims for medical

15  malpractice, failure to furnish medical care, failure to provide

16  adequate medical personnel and facilities, and negligence

17  undisputedly belong to Salazar. These actions relate to injuries

18  Salazar suffered prior to his death. Although Plaintiff alleges

19  that Defendants' acts or omissions in those areas proximately

20  caused her injury as well, the person directly injured was

21  Salazar. (Compl. ¶¶ 25, 27). Thus, while these claims may serve

22  as factual bases for Plaintiff's wrongful death claim, the causes

23  of action are not hers to raise.

24      Defendants argue that Plaintiff cannot cure this defect in

25  her complaint by making representative claims on behalf of

26  Salazar because any such filing would be late at this juncture.

27  ///

28  ///

8

1  Defendants rely on <u>Coats v. K-Mart Corp.</u>, 215 Cal. App. 3d, 961
2  (1989), arguing that Plaintiff cannot file her claim in a
3  representative capacity because the claim would not "relate back"
4  and would be barred by the statute of limitations.

5      In <u>Coats</u>, the decedent's mother brought a wrongful death
6  claim against K-Mart as administratix of the decedent's estate.
7  Decedent's mother was not appointed administratix until five
8  years after the complaint was filed. The court did not allow the
9  late appointment of the decedent's mother as administratix of the
10 estate to relate back to the filing of the original complaint.
11 <u>Id.</u> at 967. However, the court based its decision on the fact
12 that the decedent's mother knew or should have known that she was
13 not the administratix at the time she filed the complaint and had
14 made no effort to be timely appointed. <u>Id.</u> at 968.

15     This case may be factually distinguishable both in terms of
16 the time that has elapsed since the filing of Plaintiff's
17 complaint and Plaintiff's particular circumstances in terms of
18 whether she should have taken earlier steps to ensure
19 representation of her son's interests. In addition, the <u>Coats</u>
20 holding was called into question by <u>Cloud v. Northrop Grumman</u>
21 <u>Corp.</u>, 67 Cal.  App. 4th, 995 (1998), which noted a 1941
22 California Supreme Court decision holding that an amendment to a
23 claim may substitute a real party in interest as long as the
24 cause of action stays the same. <u>Klopstock v. Superior Court</u>, 17
25 Cal.2d 13 (1941). Additional California case law also suggests
26 that an amended complaint that merely makes a technical change in
27 the capacity in which the plaintiff sues on the same cause of
28 action will relate back to the original filing of the complaint.

9

1   <u>Dominguez v. City of Alhambra</u>, 118 Cal. App. 3d 237, 243 (1981).

2       The Court finds that because California law may allow
3   Plaintiff to bring these claims in a representative capacity as
4   Salazar's successor in interest, the complaint can potentially be
5   cured by granting leave to amend. Accordingly, Plaintiff's
6   Second, Third, Fourth, and Ninth Causes of Action are dismissed
7   with leave to amend.

8       While the remainder of Plaintiff's state law claims cannot
9   be dismissed on standing grounds, certain of those claims
10  nonetheless fail on a substantive basis.

11  **B. Plaintiff's claims for Fraud, Obstruction of Justice, and IIED**
12  **cannot be Maintained as Currently Stated.**

13      **1. Fraud, Corruption and Malice**

14      Plaintiff's Fifth Cause of Action, for "fraud, corruption
15  and malice" is based on Cal. Gov't Code § 822.2.[6] This code
16  section provides immunity to public employees for an injury
17  caused by misrepresentation unless they are guilty of "actual
18  fraud, corruption or actual malice." This code section does not
19  create a separate cause of action for "fraud, corruption, and
20  malice."
21  ///
22  ///
23  ///
24

25      [6] Plaintiff listed Cal. Gov't Code § 822.2 as the sole basis
26  of her fraud, corruption and malice claim. Cal. Gov't Code §
    822.2 only addresses the liability of public employees and not
27  public entities. Even so, it is clear from the complaint that
    Plaintiff brings the claim against both the individual Defendants
28  and the State.

1  Rather, it establishes a requirement that "in addition to the
2  essentials of common law deceit," the plaintiff must also allege
3  that the public employee was motivated by "corruption or actual
4  malice, i.e., a conscious intent to deceive, vex, annoy or harm."
5  Masters v. San Bernardino County Employees Retirement Assoc., 32
6  Cal. App. 4th 30, 42 (1995) (emphasis added). Thus, in order to
7  impose liability on a public employee for misrepresentation,
8  Plaintiff is required to allege common law deceit as well as
9  corruption or actual malice.

10      California Civil Code § 1710 defines four kinds of
11  actionable deceit (or fraud): (1) intentional misrepresentation;
12  (2) negligent misrepresentation; (3) concealment; and (4) failure
13  to perform a promise. See also Masters v. San Bernardino County
14  Employees Retirement Assoc., 32 Cal. App. 4th 30, 41-42 (1995).
15  All types of fraud require that the Defendant acted "with intent
16  to induce [the plaintiff] to alter his position to [the
17  plaintiff's] injury or risk." Cal. Civil Code § 1709. Thus, all
18  types of actionable fraud require justifiable reliance with
19  resulting damage based on that reliance.

20      Plaintiff's fraud claim is based on allegations that the
21  Defendants covered up her son's death and ruled it a suicide.
22  (Compl. ¶41). To establish a claim for fraud, Plaintiff will have
23  to show that she relied on Defendants' misrepresentation to alter
24  her legal position. See Wilhelm v. Pray, Price, Williams &
25  Russell, 186 Cal. App. 3d 1324, 1331-32 (1986). In Plaintiff's
26  case, however, there is no indication that Plaintiff relied on
27  Defendants' misrepresentation regarding her son's death to her
28  detriment.

1  Because Plaintiff's complaint consequently does not state a claim
2  for fraud, Defendants' motion to dismiss the Fifth Cause of
3  Action is GRANTED with leave to amend.

4      **2. Obstruction of Justice**

5      Defendants contend that the claim for obstruction of justice
6  should be dismissed because it is a criminal offense, not a state
7  tort or a constitutional wrong. In response, Plaintiff argues
8  that a motion to dismiss should not be used to dispose of a
9  "novel legal theory that can best be assessed after factual
10 development." (Opp'n 21:10-13, citing <u>Baker v. Cuomo</u>, 58 F.3d
11 814, 818-19 (2nd Cir. 1995)).

12     Obstruction of justice is far from a "novel legal theory."
13 In California, obstruction of justice covers a group of criminal
14 offenses that are defined by statute. 2 Witkin, California Crim.
15 Law § 1 (3d ed. 2000). Plaintiff is not the first to attempt to
16 bring a civil obstruction of justice claim. In <u>Agnew v. Parks</u>,
17 172 Cal. App. 2d 756 (1959), a civil plaintiff brought suit
18 alleging obstruction in the orderly prosecution of her
19 malpractice action consisting of false representation and
20 concealment of evidence. The court noted that the common law
21 crime for obstruction of justice was not recognized under
22 California statutes but that the separate offenses for perjury
23 and concealment of evidence were designated under the statutes.
24 Still, the court explicitly held that "no civil right can be
25 predicated upon a mere violation of a criminal statute."
26 ///
27 ///
28 ///

1   Id. at 765. See Ting v. U.S., 927 F.2d 1504, 1515 (9th Cir.

2   1991), citing Agnew, 172 Cal. App. 2d 756 (stating that civil

3   actions for damages or injuries arising from false testimony or

4   perjury are not recognized in California). Thus, California

5   clearly does not recognize a civil claim for any offense for

6   obstruction of justice.

7        Because obstruction of justice is a criminal offense that

8   California courts have refused to recognize as a civil action,

9   the Court finds that Plaintiff has failed to state a viable

10  claim. Accordingly, Defendants motion to dismiss the claim for

11  obstruction of justice is GRANTED without leave to amend.

12       **3. Intentional Infliction of Emotional Distress**

13       Defendants contend that Horn has failed to state a claim for

14  IIED. To state a claim for IIED, a plaintiff must allege "(1)

15  extreme and outrageous conduct by the defendant with the

16  intention of causing, emotional distress; (2) the plaintiff's

17  suffering severe or extreme emotional distress; and (3) actual

18  and proximate causation of the emotional distress by the

19  defendant's outrageous conduct . . . ." Christensen v. Superior

20  Court, 54 Cal. 3d 868, 903 (1991) (alteration in original)

21  (internal quotations omitted). A plaintiff must also allege that

22  the defendant's conduct occurred in the presence of the plaintiff

23  of whom the defendant was aware. Id. at 903, 906. See also Smith

24  v. Pust, 19 Cal. App. 4th 263, 274 (1993) ("[I]t is not enough

25  that an act be outrageous to state a cause of action for [IIED].

26  Intentional means more than the nonaccidental nature of the

27  wrongful act. The act must also be *directed* at the plaintiff or

28  in the presence of the plaintiff."

13

1   (emphasis in original)), <u>citing</u> <u>Christensen</u>, 54 Cal. 3d at 903.

2        The "extreme and outrageous conduct" that Plaintiff alleges

3   Defendants engaged in includes the decision to house Salazar with

4   Defendant Christian and the alleged "cover up" of Salazar's

5   murder. Nowhere in her complaint does Plaintiff allege that this

6   conduct was directed at her. Plaintiff has not alleged that the

7   she was witness to or that the decision to house Salazar with

8   Defendant Christian was directed at her. Furthermore, although

9   Defendants' alleged cover-up of Salazar's death may very well

10  constitute "extreme and outrageous" conduct, nothing in

11  Plaintiff's complaint suggests that the alleged misconduct was

12  directed at her with the intent to cause her severe emotional

13  distress.

14       Accordingly, Defendants' motion to dismiss Plaintiff's claim

15  for IIED is GRANTED. Plaintiff will, however, be accorded leave

16  to amend.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1

**CONCLUSION**

2

3        Based on the foregoing, Plaintiff's Second, Third, Fourth,

4   Fifth, Eighth, Ninth, Tenth, Eleventh, and Twelfth Causes of

5   Action are dismissed with twenty (20) days leave to amend.

6   Plaintiff's Sixth Cause of Action is dismissed without leave to

7   amend. Defendants' motion to dismiss as to all other causes of

8   action is DENIED.

9

10       IT IS SO ORDERED.

11   DATED: August 10, 2005

12

13

14                                    _____

15                                    MORRISON C. ENGLAND, JR
                                     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

15