UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| FRANCIS HORN, an individual, | NO. CIV. S 05-0814 MCE KJM |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| STATE OF CALIFORNIA; CALIFORNIA DEPARTMENT OF CORRECTIONS; ASSOC. WARDEN K.M. CHASTAIN, individually; CHIEF DEPUTY WARDEN STILES, individually; CORRECTIONAL OFFICE J. GRADY, individually; MTA W. VAN SANDT, individually; RN T. MEEKS, individually; RN G. LAUCIRICA, individually; RN J. MARSTON, individually; FRANK CHRISTIAN, individually, and DOES 1 through 250, inclusive, | |
| Defendant. | |

----oo0oo----

By Memorandum and Order signed August 10, 2005, this Court granted Defendants' Motion to Dismiss, in part, and permitted

1

Plaintiff Francis Horn ("Plaintiff") to amend her complaint. Plaintiff thereafter filed her Second Amended Complaint ("SAC") on August 30, 2005. Defendants[1] now again move to dismiss portions of that amended pleading for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure[2] 12(b)(6).

**BACKGROUND**[3]

On or about January 11, 2003, Plaintiff's son, Gilbert M. Salazar ("Salazar"), died while an inmate at the California State Prison in Sacramento. Salazar's death was ruled a suicide by the California Department of Corrections.

Plaintiff alleges that Salazar was in fact beaten to death by his cellmate, Defendant Christian. According to Plaintiff, Defendants Chastain and Stiles, as members of the prison classification committee, violated applicable standards and regulations by deciding to house Salazar with Christian given

---

[1] In addition to the State of California and California Department of Corrections (hereinafter referred to collectively as "State" or "State of California"), individual defendants include Associate Warden K.M. Chastain ("Chastain"), Chief Deputy Warden Stiles ("Stiles"), Correctional Officer J. Grady ("Grady"), MTA W. Van Sandt ("Van Sandt"), RN T. Meeks ("Meeks"), RN G. Laucirica ("Laucirica"), RN J. Marston ("Marston"), and inmate Frank Christian ("Christian"). This motion is brought on behalf of all defendants except for Laucirica and Christian. Unless noted to the contrary, the term "Defendants" will refer to the moving defendants.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise specified.

[3] The facts as stated in this section are taken directly from Plaintiff's complaint.

2

their knowledge of prior altercations and violence involving the two men.  Plaintiff goes on to allege that Salazar actually complained about the mistreatment he received from Christian, which purportedly included both mental and physical abuse.  Plaintiff claims that those complaints, as well as Salazar's requests that he accordingly be transferred, were ignored by Defendants.

Plaintiff's complaint states that Defendant Christian, at some unspecified time before Salazar's death, was seen hitting Salazar with such force that his "head was bouncing off the concrete."  (SAC, ¶ 29).  Salazar was subsequently discovered lying in a pool of blood in his cell.  Although Plaintiff admits that correctional staff, including Defendant Grady, attempted as assist Salazar upon that discovery, she claims that failure of staff to carry personal alarms somehow delayed medical attention to Salazar and led to his death.  Id.  In addition, Plaintiff states that certain unidentified personnel working in the prison control tower were inattentive as a result of "playing dominoes or some other recreational activity".  She alleges that because of that activity those personnel also did not respond quickly enough to the emergency posed by Salazar's discovery.  Finally, Plaintiff maintains that to compound matters further, "medical staff [including defendants Van Sandt, Meeks and Marston] did not provide adequate or proper medical treatment to Salazar when they did receive notice of [his] emergency situation" and that Salazar died as a result.  Id. at ¶ 30.  Plaintiff does not offer any further details as to how medical care given to Salazar, after his discovery lying in a pool of blood, was somehow below the

3

standard of care. In fact, Plaintiff claims elsewhere in her complaint that Defendant Christian killed Salazar, then "made it look like suicide by cutting Salazar's arm." (SAC, ¶ 28).

Plaintiff finally alleges that the remaining defendants also "engaged in a fraudulent cover-up to rule Salazar's death as a suicide when they, and each of them, knew that he had been killed by Defendant Christian." Id.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). A complaint will not be dismissed for failure to state a claim "'unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief.'" Yamaguchi v. Dep't of the Air Force, 109 F.3d 1475, 1480 (9th Cir. 1997) (quoting Lewis v. Tel. Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996).

If a motion to dismiss is granted for failure to state a viable claim, the Court must then determine whether to grant leave to amend. Generally, leave to amend should be denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment. Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980).

//

**ANALYSIS**

Defendants' initial motion to dismiss focused primarily on issues pertaining to Plaintiff's standing to bring the claims asserted in her complaint. With respect to the substance of the claims themselves, the only deficiency identified through Defendants' initial motion, and repeated in the motion now before the Court, concerns the adequacy of Plaintiff's claim for intentional infliction of emotional distress. The additional grounds for dismissal now cited by Defendants concern the viability, in whole or in part, of Plaintiff's First Cause of Action, for Medical Malpractice, the Second Cause of Action, for Failure to Furnish Medical Care, and the Third Cause of Action, for Failure to Provide Adequate Medical Personnel Facilities. In addition, Defendant State of California claims that the Fourth and Twelfth Causes of Action, for failure to discharge certain mandatory duties, fail because Plaintiff does not specifically identify the statutory bases for such duties. Defendant State also claims that it is immune from liability for wrongful death as alleged in the Tenth Cause of action. Finally, Defendants contend that Plaintiff cannot state any claim for abuse of process (as alleged in the Eleventh Cause of Action) under the circumstances of this case.

Each of these alleged deficiencies will now be addressed.
//
//

**1. Medical Malpractice.**

Defendants claim that the First Cause of Action fails to the extent that it asserts a claim for medical malpractice against all defendants. While Defendants are correct in asserting such a claim cannot be pursued against non-medical defendants, the SAC in fact makes it clear that the First Cause of Action is directed only to "all Health Care Defendants". Because the SAC makes it clear that only Defendants Van Sandt, Meeks, and Marston so qualify (as either a medical technician or registered nurses, see ¶¶ 10, 11 and 13, respectively), Defendants' argument concerning the First Cause of Action is simply incorrect. The Motion to Dismiss as to that claim is hence denied.

**2. Failure to Furnish Medical Care.**

Plaintiff's Second Cause of Action, for Failure to Furnish Medical Care, is based on violation of California Government Code § 845.6, which states in pertinent part as follows:

> "Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but... a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care..."

Consequently, to state a claim for violation of § 845.6, Plaintiff must show that Defendants knew or had reason to know that Salazar was in need of immediate medical care, but failed to act reasonably in summoning such care. Unless Plaintiff can demonstrate that Defendants' alleged inaction comes within this limited exception to the general rule of non-liability, no viable

claim under § 845.6 can be stated.  *See* <u>Watson v. State</u>, 21 Cal. App. 4th 836, 841-42 (1993).

     Plaintiff's SAC fails to make factual allegations sufficient in this regard.  In fact, ¶ 29 states that upon discovering Salazar lying in a pool of blood in his cell, Defendant Grady and others entered the cell and attempted to assist him.  There is no allegation that medical care was delayed at that point. Plaintiff nonetheless appears to claim that Defendants' failure to reasonably summon care is rooted in their failure to carry personal alarms, and to being distracted by virtue of being engaged in other activities.  Those alleged failures, however, even if true, do not translate into an awareness of the need for immediate medical care, as required by the statute.  There is no allegation that Defendants were aware of the need for such immediate care until Salazar's body was actually discovered, and there is nothing in the SAC as presently constituted to suggest that care was not provided at that time.  Consequently Plaintiff has not pled a viable claim for violation of § 845.6, and Defendants' Motion to Dismiss the Second Cause of Action will be granted.

**3.  Failure to Provide Medical Facilities and Equipment**.

     For her Third Cause of Action, Plaintiff pleads a violation of California Government Code § 855:

> (a) A public entity that operates or maintains any medical facility that is subject to regulation by the State Department of Health Services, Social Services, Developmental Services, or Mental Health is liable for injury proximately caused by the failure of the public entity to provide adequate or sufficient equipment, personnel or facilities required by any statute or any

7

> regulation of the State Department of Health Services, Social Services, Developmental Services, or Mental Health prescribing minimum standards for equipment, personnel or facilities, unless the public entity establishes that it exercised reasonable diligence to comply with the applicable statute or regulation.

The statute hence requires, as a prerequisite for liability, that a public entity fail to provide medical equipment, facilities or personnel *required* by specific statute or regulation. Plaintiff's SAC, however, states only in the most general of terms that the public entity defendants "failed to provide adequate or proper medical treatment to Salazar when they did receive notice of [his] emergency situation." (SAC, ¶ 30). There is no reference to any specific equipment, facilities or personnel required by statute or regulation, as mandated by § 855. The SAC complaint does not specify what statutes and/or regulations are implicated. Without additional facts in this regard, the Third Cause of Action fails and is accordingly subject to dismissal on that basis.[4]

**4. Failure to Specify Alleged Mandatory Duties.**

Both the Fourth and Twelfth Causes of Action are premised on Defendants' alleged failure to discharge mandatory duties under California Government Code § 815.6. That section provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of

---

[4] While Defendants' Motion also seeks to dismiss all non-public entity defendants as parties to this claim given § 855's clear limitation to public entities, the heading to the Third Cause of Action specifically limits the claim to "All Public Entity Defendants". Hence there is no claim against the individual defendants in the Third Cause of Action and the Motion to Dismiss is not well taken in that regard.

8

> a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

In order to state a claim under § 815.6, then, an enactment must impose a mandatory, and not a discretionary duty. The underlying enactment must also protect against the kind of injury invoked as a basis for liability, and breach of the mandatory duty set forth by the enactment in question has to be a proximate cause of the injury suffered. *See* Walt Rankin & Assoc., Inc. v. City of Murrieta, 84 Cal. App. 4th 605, 614 (2000).

Plaintiff here has failed to specify any enactment imposing a mandatory duty on the State of California as the public entity at issue. It is not sufficient to argue, as Plaintiff does, that the SAC somehow "infers" that the requisite enactment flows from the Eighth and Fourteenth Amendments, or that the identity of such enactment can simply be obtained through discovery. (Opposition, 17:18-25). Without more factual specificity, Plaintiff's Fourth and Twelfth Causes of Action plainly fail to state a viable claim.

**5.   Intentional Infliction of Emotional Distress.**

In the Fifth Cause of Action, Plaintiff asserts a claim for intentional infliction of emotional distress as to Salazar in her representational capacity on his behalf. The cause of action makes it clear that Plaintiff is not alleging that she was personally subjected to the extreme and outrageous conduct that is required to state a cause of action for infliction of such

9

distress. *See, e.g.,* <u>Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.</u>, 48 Cal. 3d 583, 593-94 (1989). Consequently, in assessing Plaintiff's claim, only conduct directed expressly to Salazar need be considered.

Stripped to its essence, that conduct as to Salazar (at least as currently stated in the SAC) amounts only to an allegation that Salazar was wrongfully housed with Defendant Christian, despite the fact that Salazar had asked to be moved to another cell or a different institution. While the SAC states generally that "Salazar also complained about Defendant Christian's mistreatment towards him, including physical abuse and mental abuse" (SAC, ¶ 26), no specifics as to the nature of such abuse are identified. In addition, the remainder of allegations made in the SAC pertain either to conduct not directed specifically to Salazar (like failure to wear a personal alarm) or conduct of which Salazar would necessarily have been unaware (such as any delay in obtaining adequate medical care after Salazar was presumably discovered unconscious, or any alleged "cover-up) after Salazar's death). Those allegations would not appear to relate to any conduct especially calculated to cause Salazar serious mental distress.

Salazar's placement in a cell with Christian does not itself rise to the level of extreme or outrageous conduct especially calculated to cause severe emotional distress, as it must to state a cause of action for intentional infliction of such distress. *See* <u>Christensen v. Superior Court</u>, 54 Cal. 3d 868, 903 (1991); *see also* <u>Ochoa v. Superior Court</u>, 39 Cal. 3d 159, 165 n. 5 (1985). While the SAC states that Salazar "complained" about

10

abuse at the hands of Defendant Christian, it fails to indicate to whom those complaints were directed, or the kind of abuse that was inflicted.

The facts as pled in the SAC are simply insufficient in identifying conduct rising to the level of outrageousness required to sustain a cause of action for intentional infliction of emotional distress. Defendants' Motion to Dismiss as to the Fifth Cause of Action is hence granted.

**7.  Wrongful Death**

The next argument posited by Defendants' Motion to Dismiss concerns the Tenth Cause of Action, for Wrongful Death. The State of California contends that Plaintiff cannot maintain a wrongful death claim against the State on immunity grounds.

Under California Government Code § 844.6(a)(2), a public entity is not liable for "[a]n injury to any prisoner." Because injury is defined in the statutory structure as including death (*see* Government Code § 810.8), wrongful death actions brought on behalf of deceased prisoners like Salazar are generally precluded by the immunity afforded by § 844.6(a)(2). Section 844.6(d), however, provides an exception to that general rule by allowing for a wrongful death action on a prisoner's behalf if the prisoner death is allegedly caused by a dangerous condition of public property. Garcia v. State of California, 247 Cal. App. 2d 814, 817 (1967); May v. County of Monterey, 139 Cal. App. 3d 717, 721 (1983). That exception is limited to dangerous condition claims, and does not extend to acts of other prisoners or acts of prison employees. Id.

1      Taking the allegations of the SAC as a whole, it appears
2 clear that Plaintiff alleges her son's death was either caused by
3 his cellmate, Defendant Christian, and/or the inaction of prison
4 employees in failing to protect Salazar and to obtain medical
5 care on a timely basis.  Immunity applies to either of those
6 scenarios under both Garcia and May.  Plaintiff nonetheless
7 attempts to argue, in opposition to this motion, that she comes
8 within the exception to the general rule of wrongful death
9 immunity because her claim "is also predicated upon a dangerous
10 condition of public property." (Opposition, 24:15-22).  She
11 identifies the dangerous condition present here as "being housed
12 with a prisoner, whom the defendants knew had violent tendencies,
13 and with whom the decedent [Salazar] obviously did not get along
14 with." Id.

15      Plaintiff's argument lacks merit.  The Garcia court states
16 unequivocally that "no liability is imposed upon a public entity
17 by reason of the death of a prisoner resulting from an act of the
18 prisoner himself, acts of other prisoners, acts of prison
19 employees, or acts or prison invitees, whether committed
20 negligently or wilfully."  247 Cal. App. 2d at 817.  As indicated
21 above, this holding applies squarely to Plaintiff's allegations
22 here, and cannot be circumvented through argument that the
23 charges pertaining to Defendant Christian and to prison personnel
24 somehow also constitute a dangerous condition of public property.
25 Because no dangerous condition of public property has been
26 alleged, Plaintiff's Tenth Cause of Action fails as against
27 Defendant State of California.
28

**6. Abuse of Process.**

Defendants finally assert that the Eleventh Cause of Action, for Abuse of Process, cannot stand.  An abuse of process claim, by definition, requires that legal process be improperly used to accomplish a purpose contrary to that for which the process was designed.  *See* <u>Ion Equipment Corp. v. Nelson</u>, 110 Cal. App. 3d 868, 875-76 (1980).  Where a proceeding does not emanate from or rest on the authority or jurisdiction of the court, there can be no cause of action for abuse of process.  <u>Meadows v. Bakersfield Sav. & Loan Ass'n</u>, 250 Cal. App. 2d 749, 753 (1967).  According to Defendants, although Plaintiff alleges that an abuse of process occurred "in covering up Salazar's death and ruling same as a suicide" (SAC, ¶ 61), the SAC identifies no legal process or proceeding that would support an abuse of process claim.

Plaintiff has not opposed Defendants' Motion to Dismiss as to the Eleventh Cause of Action, and, because Defendants' position appears correct, the abuse of process claim will be dismissed.

**CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss is DENIED as the First Cause of Action, but GRANTED as to the Second, Third, Fourth, Fifth, Eleventh and Twelfth Causes of
//
//

13

Action.[5] The Motion is also GRANTED as to Defendant State of California, only, with respect to the Tenth Cause of Action. Because it appears that some of the deficiencies of Plaintiffs' complaint may yet be rectified through amendment, leave to amend will be permitted one final time.

IT IS SO ORDERED.

DATED: November 16, 2005

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[5] Because oral argument would not be of material assistance, this matter was deemed suitable for decision without oral argument. E.D. Local Rule 78-230(h).

14